Norris Randell WAUQUA, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-83-232.

Court of Criminal Appeals of Oklahoma.

Jan. 8, 1985.

Rehearing Denied Feb. 8, 1985.

Mark Barrett, Special Counsel, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Thomas L. Spencer, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

On appeal from his conviction of Murder in the First Degree, Case No. CRF–80–53, and sentence of life imprisonment from the District Court of Cotton County, Oklahoma, the appellant, Norris Randell Wauqua, raises six assignments of error. The facts are as follows:

On the evening of October 4, 1980, appellant was working at the Temple Bar in Temple, Oklahoma. At approximately 10:00 that evening, Coy and Linda Mullins came into the bar with several friends. During the evening, one of the friends had two altercations with another bar patron outside the bar. Appellant told Mike Hen-

drix, another member of the group, to get his friend out of the bar or he was "going to blow [the friend's] head off." A few minutes later, the Mullins' were standing in the doorway of the bar. Witnesses testified that when Coy Mullins refused appellant's request for them to move away from the door, appellant responded, "I had just as soon blow your head off as look at you." Mullins replied with, "Try it," and appellant reached behind his back then extended his arm toward Mullins, who was only a few feet away. Linda Mullins Taylor testified she heard a loud blast and saw a flash burst from appellant's hand. Mullins fell to the floor after being shot in the temple.

Officers from the Cotton County Sheriff's Office arrived in minutes. The bar owner also told them at the scene that appellant had shot Mullins. When appellant refused to be taken into custody, a brief scuffle ensued between appellant and one of the officers.

Two previous trials of this case resulted in mistrials because of hung juries. At the third trial, eight bar patrons and the bar owner testified to what they had seen and heard, and the officers testified about the arrest. Appellant took the stand and denied shooting Mullins. The two other defense witnesses testimony only went to the credibility of a state's witness.

## I.

■ Appellant first contends the trial court committed reversible error by failing to give a requested instruction to the jury on a lesser included offense of misdemeanor-manslaughter. The request for the instruction came orally, and no written proposal for such an instruction was tendered. A long line of cases requires such an instruction request to be in writing. E.g. *McDonald v. State*, 674 P.2d 51 (Okl.Cr. 1984). Furthermore, even if such a written request had been made, it would have properly been refused.

Appellant relies heavily on *Dawson v. State*, 647 P.2d 447 (Okl.Cr.1982), a case we reversed for failure to instruct on misdemeanor-manslaughter. That reliance, however, is not soundly based because *Dawson* is clearly different from the present case. In *Dawson*, there was evidence tending to show that the homicide was an accident caused by the defendant's reckless conduct. We said:

> "Where there is any evidence tending to establish that a defendant was engaged in a misdemeanor at the time of the homicide, *and that he lacked a design to effect death*, the trial court must instruct on manslaughter in the first degree." (emphasis added)
>
> *Id.* at 449.

In the present case, there was evidence indicating that appellant had "a design to effect death."

It is, of course, axiomatic that instructions on lesser-included offenses must be given when they are supported by the evidence. *Laymon v. State*, 513 P.2d 883 (Okl.Cr.1973). It is also true that:

> "... where there is no evidence to support a lower degree of the crime charged or included offense, it is not only unnecessary to instruct thereon, but the court has no right to ask the jury to consider the issue." (citations omitted) *Irvin v. State*, 617 P.2d 588, 596 (Okl.Cr.1980).

In the present case, the trial court correctly instructed the jury on the only lesser included offense with any support in the record, i.e. "heat of passion" manslaughter. An instruction on misdemeanor-manslaughter was clearly not warranted and was properly refused.

## II.

■ In his second assignment of error, appellant claims error in the trial court's failure to give an instruction to the jury on murder in the second degree. Once again, however, we will review this issue only for fundamental error as no request was made by appellant, either in writing or orally. *Long v. State*, 654 P.2d 647 (Okl.Cr.1982). We find there was no error, much less fundamental error.

■ Homicide is murder in the second degree when committed "without any

premeditated design to effect the death of any particular individual." 21 O.S.1981, § 701.8. Appellant contends there is no evidence of a premeditated design, and that the killing was a "spur-of-the-moment action." (Appellant's brief, p. 12). However, this contention seems to ignore 21 O.S. 1981, § 703 which states: "A design to effect death sufficient to constitute murder may be formed instantly before committing the act by which it is carried into execution." It also ignores the evidence that, just before the shooting, appellant said to the victim, "I had just as soon blow your head off as look at you." and the victim's response, "Try it." (Transcript p. 118). This assignment of error is without merit.

### III.

Appellant's third assignment of error cites as error the failure of the trial court to instruct the jury on how they were to use evidence of a prior inconsistent statement by one of the state's witnesses. But appellant again failed to request such an instruction from the trial judge, and we will review only for fundamental error. *Long v. State*, supra.

■ Appellant claims this prior inconsistent statement is the only credible evidence connecting him with the murder weapon. However, even a cursory review of the record indicates that simply is not true. There was considerable direct and circumstantial evidence that appellant had a gun, or this particular gun on the night of the homicide, making this testimony somewhat cumulative. We therefore find no fundamental error occured, and this assignment of error is without merit.

### IV.

In his fourth assignment of error, appellant claims he was denied his right of cross-examination when the trial court prohibited him from questioning a police officer about the penalty of Driving While Under the Influence of Liquor. He states the testimony was needed to properly discredit a state's witness, who, appellant asserts, was coerced into testifying in exchange for a reduction of a D.U.I. offense to Public Intoxication. This contention is without merit.

■ First, it is within the trial court's discretion to limit testimony on collateral matters, and its ruling will not be disturbed on appeal without a clear showing of abuse of that discretion. *Wofford v. State*, 581 P.2d 905 (Okl.Cr.1978). There does not appear to be any abuse of discretion as the trial judge's ruling was entirely correct. There was no evidence that the witness was ever charged with D.U.I.; in fact, the arresting officer testified the witness could not be charged with D.U.I. because he (the officer) did not see the witness driving.

■ Furthermore, appellant clearly was not prejudiced as he was permitted to elicit testimony from a third person that the witness feared that "they're going to give me five years if I don't testify." (Transcript p. 304). Certainly a witness' perception of a possible penalty is more probative of the possibility of coercion than the penalty allowable by law. Therefore we find there was no error, and the appellant was not prejudiced in any way.

### V.

■ Appellant next cites as error the trial court's failure to provide state paid transcripts of the first two trials of this offense. The transcripts were requested in appellant's designation of record and in an amended designation of record. Appellant contends the transcripts are necessary to determine whether the third trial constituted a violation of the constitutional protection against double jeopardy.

We have held that an indigent is not entitled to a free transcript when it is not needed to vindicate an existing legal right. *Maxville v. State*, 629 P.2d 1279 (Okl.Cr. 1981). We have also said that the right against double jeopardy is a waivable right, and that waiver can be implied in a defendant's failure to assert that right at trial. *Hall v. State*, 650 P.2d 893 (Okl.Cr.1982). In the present case, since appellant failed to avail himself of any of the multitude of

opportunities to assert a claim of former jeopardy, he has waived his right against double jeopardy. Thus, the denial of the transcripts of the previous trials was a correct ruling.

■ Finally, appellant claims the trial court erroneously admitted hearsay testimony of appellant's silence at the homicide scene in the face of an accusatory statement. An undersheriff testified that the owner of the bar, within the hearing of appellant, told the undersheriff that appellant was "the man that done the shooting." The undersheriff stated that appellant was silent after the accusation was made. Appellant now asserts that the statement was inadmissible hearsay. This assertion is clearly wrong.

12 O.S.1981, § 2801(4)(b)(2) states:

4. A statement is not hearsay if:

.    .    .    .    .

(2) a statement of which he has manifested his adoption or belief in its truth, ...

We have held that silence in the face of an accusation can be a manifestation of adoption of accusation. *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983). Therefore, the statement was not hearsay, and was admissible. We find this allegation meritless.

Accordingly, for the foregoing reasons, the judgment and sentence is AFFIRMED.

BUSSEY, P.J., concurs in results.

BRETT, J., concurs.