Wayne Henry HYATT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–86–515.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 1989.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., M. Caroline Emerson, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

Wayne Henry Hyatt, the appellant, was tried by jury and convicted of three counts of Second Degree Burglary (21 O.S.1981, § 1435), After Former Conviction of Two Felonies (21 O.S.1981, § 51), in Canadian County District Court, Case Nos. CRF–85–360 and CRF–85–361, before the Honorable Reta Strubhar, Associate District Judge. The jury set punishment at twenty (20) years imprisonment on each count. Judgment and sentence was imposed in accordance with the jury's verdict, the sentences to run concurrently. We affirm.

During the early morning hours of July 27, 1985, Officer Dwayne Hoehner of the El Reno Police Department received a radio dispatch that a white male in his twenties wearing blue jeans and a white shirt with the number "18" on it was breaking into cars at the West Oaks Apartment complex. A resident observed the suspect rummaging through several cars, including the glove compartments. Appellant was observed in an adjacent apartment complex and, because he fit the description of the radio dispatch, officers asked him his name, where he lived, and what he was doing. Appellant responded that he was not a resident, and was there to "kick back and relax." On the basis of the matching description, officers placed appellant under arrest for burglary. As they were handcuffing him, appellant blurted out "I hope you find me guilty. I deserve it. I am not even from around here...." During a pat down search, officers removed a locked blade "Uncle Henry" knife in a leather sheath bearing the initials "N.H." from appellant's back pocket. During booking, appellant had eleven Eisenhower silver dollars, and approximately $2.30 in change. The knife was later identified as one stolen from the console of a car belonging to Nick Harris, a resident at the West Oak Apartment complex. The silver dollars and change were identified as being stolen respectively from the locked glove compartments of two cars belonging to Jim and Candice York, residents of the LaVilla apartment complex.

■ Appellant first contends that his statements to police were admitted at trial in violation of the Fifth Amendment. At an *in camera* hearing, the trial court found appellant's statement voluntary finding that it was not made in response to police questioning. The record supports a finding that appellant's incriminating statement was spontaneously volunteered. "Volunteered statements of any kind are not barred by the Fifth Amendment...." *Mi-*

*randa v. Arizona,* 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). While we agree appellant was in custody at the time he made an incriminating statement, the record does not support a finding that the statement was the result of police interrogation. *See McCaulley v. State,* 750 P.2d 1124, 1127 (Okla.Crim.App.1988).

■ Appellant next claims the trial court committed reversible error in admitting other crime evidence consisting of testimony by Officer Hoehner that he observed sixteen or seventeen vehicles in the West Oaks Apartment complex parking lot that had been broken into on July 27, 1985, and testimony by Clara Zobisch that she saw a white male wearing a shirt with the number "18" on it pilfering cars in the parking lot. This issue was not properly preserved for appellate review as no objection was made at the time the other crime evidence was introduced. *See* 12 O.S.1981, § 2104(A)(1). In any event, the foregoing acts were so closely connected as to be a part of the entire transaction and were thus admissible as part of the *res gestae. Williams v. State,* 754 P.2d 555, 556 (Okla. Crim.App.1988). Ms. Zobisch's testimony was also probative as to identity. *See* 12 O.S.1981, § 2404(B). Absent a request, the trial court's failure to give a limiting instruction was not reversible error. *Drew v. State,* 771 P.2d 224, 230 (Okla.Crim.App. 1989).

■ Finally, appellant claims the trial court's failure to instruct the jury *sua sponte* during the second stage that appellant was presumed innocent of the alleged prior convictions constituted fundamental error requiring modification of his sentence. Appellant relies on *Taylor v. Kentucky,* 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). In *Taylor,* the trial judge instructed the jury as to the prosecution's burden of proof beyond a reasonable doubt, but refused the defendant's timely requested instruction on the presumption of innocence and the indictment's lack of evidentiary value. *Id.* at 479, 98 S.Ct. at 1932. The Court held that the trial court's refusal to give the defendant's requested instruction violated his due process right to a fair trial reasoning as follows:

> [T]he combination of the skeletal instructions, the possible harmful inferences from the references to the indictment, and the repeated suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine danger that the jury would convict petitioner on the basis of those extraneous considerations, rather than on the evidence introduced at trial. That risk was heightened because the trial essentially was a swearing contest between victim and accused.

*Taylor,* 436 U.S. at 487–88, 98 S.Ct. at 1936 (footnote omitted).

The instant case is clearly distinguishable from *Taylor.* Here, there was no timely requested instruction on the presumption of innocence, nor was the trial essentially a swearing match between victim and accused. The jury was instructed that the State had the burden of proving the allegations of prior convictions beyond a reasonable doubt and, significantly, that such allegations were not themselves evidence of guilt. (O.R. 44–45)

Following *Taylor,* the United States Supreme Court held:

> [T]he failure to give a requested instruction on the presumption of innocence does not in and of itself violate the Constitution. Under *Taylor,* such a failure must be evaluated in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors—to determine whether the defendant received a constitutionally fair trial.

*Kentucky v. Whorton,* 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979). On the record before this Court, we find that under the *Taylor* standard, as reiterated in *Whorton,* appellant received a constitutionally fair trial.

The judgment and sentence is AFFIRMED.

PARKS, P.J., LANE, V.P.J., and BRETT and LUMPKIN, JJ., concur.

BUSSEY, J., not participating.